UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
UNITED STATES OF AMERICA                    SENTENCING MEMORANDUM

   -against-                                                 22-cr-00241 (LGS)


Clarence Samuel,

                Defendant
-----------------------------------------------------X


**SENTENCING MEMORANDUM ON BEHALF OF THE DEFENDANT, CLARENCE SAMUEL**


                                       RESPECTFULLY SUBMITTED,

                                       //s//David Jason Cohen//s//
                                       Cohen Forman Barone, LLP
                                       BY: David J. Cohen
                                       950 Third Avenue, 11th Floor
                                       New York, NY 10022
                                       david@cfblaw.com
                                       212-766-9111

## INTRODUCTION

Clarence Samuel (hereinafter, "Mr. Samuel", "Clarence", or "Defendant") comes before the Court for Sentencing after his plea of guilty on April 18, 2024, to having acted contrary to 18 U.S.C. §666(a)(1)(B) while working in his capacity as a superintendent for three (3) New York City Housing Authority (NYCHA) developments between 2016 and 2022. Notwithstanding his criminal conduct, Clarence was a 32-year veteran of NYCHA, having been a dedicated public servant and hard-working family man his entire life, despite the more recent years when he, like scores of other employees, began engaging in the selfish and reprehensible conduct that constituted his crime. Clarence, who has no penchant toward or history of criminality whatsoever, finds himself in his current position as a result of a confluence of factors. These factors include, his stifling financial conditions, as well as those of the numerous loved ones that Clarence was responsible for, the culture that created the widespread practice of the offending conduct. and, most notably, his own frailty and moral failing that allowed him to give into temptation. Mr. Samuel fully recognizes and concedes his wrongdoing as reflected in the charge to which he has pled guilty, and he continues to fully admit his guilt and accept the punishment to be fixed for him by this Court.

With his sentencing date just a few short weeks away, Mr. Samuel finds himself attempting to maintain the status quo in his life, in his family, and for all the people and institutions in his orbit that depend upon him, while also dedicating every waking moment to forging new opportunities that will enable him to support his family moving forward. This year continues to be the most trying and challenging of his life. Mr. Samuel continues to struggle through some of the most difficult personal circumstances still fresh off losing his mother, having lost his job and the career he spent decades building, along with income (and, health insurance for his wife and

children), that his father and other relatives had come to be dependent upon and which he has shared unconditionally for many years. Additionally, Clarence is, understandably, also trying to reconcile the concerns (fears, anxieties, uncertainties) about what sentence this Court will impose upon him for the series of wrongheaded choices he has made and that brought him to this unenviable place of reckoning in his life. He comes before this Court with a unique personal history and as a man who has squarely and transparently addressed the underlying mistakes in judgement, decision-making, and desperate conduct that led to these offenses. Anxiously, Clarence, his wife, children, and other loved ones wait and prepare to meet the weighty financial obligations he understands the Court will impose upon the him for his crime. Clarence is and has been, fully committed to making up for the harm to the public trust and the loss to the public coffers his mistakes have caused.

On Mr. Samuel's behalf, we respectfully seek this Court's justice and mercy in conducting its analysis of the appropriate sentence to be imposed upon him for his criminal actions. After a full consideration of Clarence as an individual, the circumstances of his life, his offending conduct, and how he is presently situated; we respectfully move this Court to sentence Clarence Samuel to a probationary sentence with appropriate conditions including the stipulated restitution obligations, and such other conditions as the Court may deem necessary and appropriate.

## I.     18 U.S.C. §3553(A) FACTORS

*18 U.S.C. § 3553(a)(1) – The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant*

**The Nature and Circumstances of the Offense**

Clarence Samuel has pled guilty to the sole count of the felony information charging him under 18 U.S.C. §666(a)(1)(B), solicitation and receipt of a bribe by an agent of an organization receiving federal funds. Specifically, Mr. Samuel pled guilty to soliciting and accepting

3

approximately $82,200 in bribes in exchange for awarding no-bid contracts from the New York City Housing Authority from 2016 through 2022. The nature of this solicitation and bribery offense is the abuse by Mr. Samuel of his decision-making position at NYCHA, in order to enrich himself. Accordingly, while there is no specific victim but rather NYCHA as an entity and the public in general (as NYCHA is an agency funded through federal taxpayer dollars), Mr. Samuel recognizes that his receipt of ill-gotten gains totaling more than $82,000 did amount to victimization of NYCHA[1], and his own individual violation of the public trust. It is Clarence and his family's fervent hope, that this Court will allow him to continue to work so that he can earn sufficient revenue to meet the high financial burden that he has brought upon himself and his dependent family.

Clarence has fully admitted his criminal responsibility to each of the elements of his crime, in that, he corruptly solicited, demanded, and accepted and agreed to accept a thing of value from a person, intending to be influenced and rewarded in connection with business, a transaction, and a series of transactions of NYCHA. His conduct, in soliciting and accepting bribes in exchange for arranging for certain contractors to receive no-bid contracts from NYCHA, unquestionably satisfies the elements of the crime and he is manifestly guilty. Counsel would note that it appears this was a situation where Mr. Samuel- essentially a blue-collar worker from an extremely modest background in his early years, who then ascended the ranks of NYCHA for over 30 years- found himself in an unmanageable financial position attempting to shoulder exorbitant costs of supporting himself and his children, as well as his rapidly deteriorating and troubled parents. Instead of admitting his situation and his inability to provide for everyone who relied on him and asked him for help, Clarence instead gave into the temptation that came along with the position he

---

[1] See, *PSR ¶¶27-28*.

held at NYCHA and began doing what so many of his colleagues were also doing in soliciting and accepting bribes for contracts.

Counsel does urge the Court to consider that the true nature of Clarence's offending conduct was that of a quietly desperate person. Clarence felt he had to shoulder everything for everyone and had to provide support (even money he did not have) or be responsible for what would likely become of his loved ones if he didn't. Of course, Clarence recognizes that it was his own choice in taking on too much financial responsibility (especially for his parents) and not requiring any assistance or contribution from his siblings, or finding some other lawful course of action. Moreover, Clarence also recognizes that the heavy costs of supporting his six children[2] are also the result of his own choices and decisions as an adult man- responsibilities from which he has never shied away or run from ever in his life. While the reality is that Clarence used the funds that he wrongfully received primarily to pay for things such as child support, his mother's home health aides, and to alleviate his alcoholic, elderly father's gambling debts, rather than enriching himself. In recognizing all of the foregoing, Clarence made the decision some time ago to accept full responsibility for the entirety of his wrongdoing and understands he will now receive the Court's punishment for that wrongdoing.

***History and Characteristics of Clarence Samuel***

As the statute counsels, an understanding of who Clarence Samuel is and the life he has led, as well as consideration of the circumstances of his life at present, are essential elements in fully determining the most just and appropriately tailored sentence for him in light of the nature and circumstances of his offending conduct. It is respectfully submitted, that Mr. Samuel's personal characteristics, his status as the heart and soul of multiple generations of his family, as

---

[2] See, *PSR ¶58*-62.

well as being a loving and involved father of six (6), and, the immense suffering, in both tangible and intangible ways, that so many members of his family would endure if he were removed from their lives, should be particularly strong considerations in favor of the non-custodial sentence the defense is seeking.

As set forth in some detail in the Probation Department's report, Clarence, who will turn 54 years old this coming October, is one of four (4) children of his mother, Mabel (deceased in 2021) and his father, Henry Samuel. See, *PSR ¶52*. Although he has both an older and younger brother, as well as a full sister and paternal, much younger, half-sister, it has been primarily Clarence who has born the responsibility for the financial costs associated with the care and maintaining the safety, comfort and well-being of his parents, as they became elderly and infirm, battling challenge after challenge. Clarence has also provided significant financial support for his sister, Regina, enabling her move back to New York City and to become an additional recurrent caretaker for their mother when she was diagnosed with Alzheimer's disease. He paid for home health aides for many years, long before their mother entered the nursing home where she ultimately passed away from COVID-19 during the pandemic. See, Exh. A, *Supporting Statement of Regina Samuel*; see also, *PSR ¶¶ 52-53*.

Shouldering the primary burden in caring for his parents was a fixture of Clarence's life over the past 20 years, and the entirety of the time he engaged in his offending conduct. For those familiar with filling this role for their parents (and the rest of their siblings and families who do not take this hefty responsibility) it can be a ceaseless, thankless and overwhelming burden. And, for Clarence, although he took it on naturally, dutifully and as cheerfully as possible for both of parents, it certainly was. Of course, he came into that role as an adult, having grown up in a struggling, working class, African American, family in Brooklyn during the 1970's and 80's. Of

6

course, this had its own share of discord, turbulence and scandal. Clarence experienced an environment both in and outside the home that was consistently chaotic, volatile and at times, incredibly dangerous. Notably, as set forth in the Probation Department's report, Clarence narrowly escaped being shot as a bystander in his youth and has also been a victim of gunpoint robbery and other forcible robberies, despite never having been arrested or accused of a crime at any time in his life. *PSR ¶¶54, 50*.

Clarence's father, Henry, although a consistently hard worker and genial man, was an alcoholic, gambling, philanderer who would become verbally and physically abusive to his wife when intoxicated. Henry left the home for a period of years, eventually starting another family when Clarence was a teenager, in a turn of events that shocked Clarence. See, *PSR ¶55*. Eventually, returning to Clarence's mother (evidently being permitted to do so) after his time away from one family and starting another, the two then remained together and living in Brooklyn thereafter until her health decline and afflictions eventually led to her entry into a full-time nursing home. It would appear to counsel, Clarence was inescapably influenced by the relationship and behavior of his parents, in particular his father, when considering his own life trajectory. Clarence was the only child, who went on to truly take care of their continuously gambling and deteriorating father throughout the years.

Presently, Henry Samuel is afflicted with stomach cancer that has recently reappeared after a period of remission, as well as diabetes and hypertension, and still gambles uncontrollably despite Clarence's continuous insistence that he stop. Clarence has paid his father's recklessly incurred gambling debts or given him money for basic needs that he has gambled away, throughout his entire adult life. Furthermore, the defendant has had to encounter and make compromises with those to whom his father has owed too much money and for too long. As aptly characterized by

the Probation Department, Clarence has always felt that "his family automatically relies on him to fix any issues". See, *PSR ¶56*; In the words of Clarence's eldest sibling, five years his senior: "(w)hen I left New York in 1999, I expected Clarence to look after our mother and he did…(n)ot only was he dealing with that for her, but our dad's gambling habits had gotten out of control and, and Clarence was able to bring that under control as well." <u>Exh. A</u>, *Statement of Regina Samuel*.

For more than 20 years, his mother's medical needs and the professional care related to her declining condition and Alzheimer's disease, were a financial responsibility that was left exclusively to Clarence. Although his sister provided some invaluable day-to-day care of their mother as well, Clarence ultimately was the one ponying up when the bills arrived and needs became greater; and, his sister could no longer be home as much and home health aides became a greater and greater necessity. Of course, Clarence was no single unattached man during the time he was taking care of so much for his parents. He had his own dependents and mouths to feed, being a father of six (6) children with ages ranging from 24 to 10. See, *PSR ¶58*-62. He loves being a father and considers this his primarily role in life. See, <u>Exh. A</u>, *Statements of Theresa Samuel, Regina Samuel, Robert J. Thomas Jr., Dana Richard-Samuel.* In the wake of his wrongdoing and serious transgressions that have already brought life-altering changes to he and his immediate family, Clarence has decided to hold himself out to his sons as both a cautionary tale- what not to do in terms of taking shortcuts and breaking the rules to get ahead- but also in order to serve as an example in an even more fundamental way.

Clarence has had to come to grips with the fact that he has failed to do the right thing and thus failed to serve as that type of example for his children- an example of how one should conduct themselves at all times. But, that is not the end of the story of who he is or who he can be as a father. Rather, the example he can now set for his children is one of humility, of having faith in

8

oneself and the courage to go forward even after one has failed so badly. Clarence has recognized that in his shame and the devastation he has created for himself, he has the chance to be a powerful example of how someone can overcome adversity, even if they themselves have brought it about. It is this noble and honorable impulse and goal that drives Clarence today. It is this impulse that led him to immediately admit his guilt and seek to delay his consequences no further than necessary. It is this impulse that has driven him into immediate rebuild and reinvention mode with his entire life. It started at the New Jersey Reentry Corporation Governor's Reentry Training and Employment Center, and has continued through advancement into his internships as recovery specialist and marches forward as he is on the precipice of beginning an intensive training course that would serve as the foundation for another potential future career path. See, Exh. B. His loved ones see it and they can see it is best part of who Clarence is.  The Clarence of 2024 who is determined to be a better man thorough hard work and dedication to his purpose. See, Exh. A.

The defense respectfully submits that Clarence has indeed "gotten it", fully recognized and confronted his criminal wrongdoing and the motivations that lie behind it, and has rededicated his entire life's purpose, now having created a tremendous force of positive momentum that continues forward and through to the present. We respectfully submit that the Court should find there are strong and compelling reasons to keep this positive momentum and unmitigated progress going- through the imposition of a non-custodial sentence for Clarence Samuel.

*18 U.S.C. § 3553(a)(2)(A) – the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense*

It is important that there be no confusion that Clarence Samuel comes before this Court fully recognizing the seriousness of the offenses he has committed, the harm to the government,

9

the public trust, and thus, society as a whole, his actions caused. As a man who has raised his children and his siblings' children[3] to have respect for the law and to understand the importance of being impeccable with one's word, Clarence thoroughly understands the importance of consequences and punishment in the shaping of good habits, correction of improper behavior, and in molding and shaping an individual who can exhibit them. In a very real sense, Clarence fully appreciates and has come to internalize the understanding that the sentence he faces and the significant obligations it will impose, in addition to the limitation on his autonomy throughout the pendency of his case, are all brought about by his own poor choices. Indeed, he has used his own mistakes and the punishment he faces, as well the remedial and rehabilitative steps he must undergo to recreate himself and his career in the years ahead, as the ultimate lesson he will be able to teach his own sons. These lessons focus on the importance of always maintaining the straight and narrow path in life and at the same time, about how to take responsibility for one's mistakes, move forward and rebuild.

*18 U.S.C. § 3553(a)(2)(B) – The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Activity*

Beyond the need for the imposed sentence to deter Clarence from reoffending[4], a sentence of non-incarceration which incorporates the full restitution he must make, and imposes continued monitoring, supervision, and other appropriate conditions, nevertheless, adequately reflects the seriousness of the offense. Such a sentence would also exhibit to the community that engaging in this type of criminal behavior will be punished by real and substantial consequences for such offenders. In the case of Clarence Samuel, society will see that this man lost his entire career,

---

[3] See, Exh. A, *Supporting Statement of nephew, Robert J. Thomas Jr*.
[4] This concept of "specific deterrence" to Mr. Samuel from future offending is addressed *infra*, in the discussion of the next statutory factor at 18 U.S.C. § 3553 (a)(2)(C).

10

benefits, ability to support himself, and had repay all the ill-gotten gains he received over the years (and, more). Additionally, given the relative notoriety of the wider scandal, his punishment will be a very public one at that.

Importantly too, however, in fixing a carefully considered and individualized sentence for the defendant, based upon his unique history and circumstances as well as the full context and nature of the specific offending and the specific harm caused, the Court demonstrates its exclusive ability to fix the correct and just punishment for each individual that comes before it. In a society where the populous sees that justice for each individual defendant is in fact flowing from the Court, after a measured consideration of all relevant circumstances, a respect for the law and for law-abiding behavior grows the strongest, the most quickly, and can be expected to be most enduring.

*18 U.S.C. § 3553(a)(2)(C) – The Need for the Sentence Imposed to Protect the Public from Further Crimes of the Defendant*

Given the nature of the offending conduct and the manner in which the repercussions of the offense, conviction and anticipated restitution requirements, will continue to significantly impact Mr. Samuel personally and professionally well into his sixties[5], the defense respectfully submits that the risk of him again becoming involved in a scheme where he uses a position as a government official to secure bribes is not only unimaginable, but literally impossible. Mr. Samuel will, most assuredly, never occupy a governmental position that would permit him to engage in the type of conduct he did here. A custodial sentence would do no more to protect the public from future crimes- like those that he has committed here- than would a probationary sentence with conditions and court-ordered restitution obligations. Moreover, as this is his only arrest (much less

---

[5] He is presently 53 years of age. See, *PSR ¶31*.

11

conviction) in his entire life[6], there is no basis upon which to find any reasonable concern that Clarence would become involved, at his age, and in the life that he leads day in and day out, with some other, different type of criminal conduct. All data suggests, that at 53 years old, the likelihood of reoffending for Clarence Samuel is extremely remote.

*18 U.S.C. § 3553(a)(2)(D) – the need for the sentence imposed to provide the defendant with needed educational of vocational training, medical care, or other correctional treatment in the most effective manner*

Thankfully, Mr. Samuel, is in generally good health although, as noted by the Probation Department, he is pre-diabetic and contending with high cholesterol. See, *PSR ¶¶ 61-62*. As someone who has taken good care of himself physically, Mr. Samuel counts himself as fortunate in not having any particularly significant medical or mental health needs at this point in time.

With respect to educational and vocational needs, however, Mr. Samuel does request that the Court remain mindful of the fact that he is, over the last handful of months, laying the foundation for an entirely new professional career, starting from scratch. Consistent with the training programs and certifications he has been engaged in, attending, and completing since his arrest earlier this year, Clarence's goal is to forge a career in a trade such as welding, heating, venting, air conditioning (HVAC) or, alternatively, in the field of recovery, where he has and plans to continue to develop his knowledge through internships. See, *PSR ¶¶ 75-76*; see also, Exh. B. While he has taken and completed some initial steps toward this new career, there are so many more steps that must be taken in order for Clarence to be able to make a living in one of these types of professions. Both the mandatory HVAC training he is just about to begin, and he will be three (3) weeks into at the time of the sentencing hearing[7], as well as obtaining a commercial driver's

---

[6] Scott is a "0-point offender", as set forth at *PSR ¶26*.
[7] See, Exh. B, *July 10, 2024 Letter of Facility Director, Michael* Hayek (regarding Clarence's official acceptance in the program).

12

license (CDL) in order to be able to legal operate a vehicle consistent with one of these types of trades will require additional training. Based on counsel's investigation, the Bureau of Prisons (BOP) has just two (2) facilities[8] that currently offer CDL training programs for inmates, and both would be hundreds of miles and many hours away from his wife and children.

*18 U.S.C. § 3553(a)(3) – The Kinds of Sentences Available*

The Court has before it a substantial range of sentencing options. The offense for which Mr. Samuel now stands for sentencing, is one to which no mandatory minimum sentence is assigned by statute, with a maximum term of imprisonment of ten (10) years. See, 18 U.S.C. § 666(a)(1)(B). The defense respectfully submits that the calculated offense level and the corresponding advisory Guideline range for of periods of incarceration, significantly exceeds that which should be considered sufficient or necessary in this case. The Court, is vested with the discretion to sentence Clarence to a probation only sentence with restitution and other conditions. In consideration of the totality of the circumstances, should the Court concur with the defense and the Probation Department[9] that significant a downward variance the computed Guideline range is indeed warranted, then we urge the Court to mete out the sought after, non-custodial sentence.

*18 U.S.C. § 3553(a)(4) – The Guidelines and Guideline Range*

The November 1, 2023 Guidelines Manual applies to this case and, pursuant to U.S.S.G. § 2C1.1(a)(1), the base offense level is 14. See, *PSR ¶ 33*.

As agreed by the parties[10], and reflected in the report of the Probation Department, a total of eight (8) levels are added as enhancements due to Clarence having been involved in more than

---

[8] FPC Pensacola and FPC Petersburg.
[9] See, *PSR, Sentencing Recommendation*.
[10] See, *Plea Agreement*.

one bribe and due the total amount of the bribes for which he is responsible. See, *PSR ¶¶ 34-35*; USSG §§2C1.1(b)(2) and 2B1.1(b)(1)(D).

Pursuant to U.S.S.G. §§3E1.1(a) and (b), three (3) levels are deducted for acceptance of responsibility and entering a guilty plea. See, *PSR ¶¶ 40-41*. Moreover, as Clarence is a "0-point offender" under USSG §§4C1.1(a) and (b), he receives an additional reduction of two (2) levels, leaving his total offense level at seventeen (17). PSR ¶¶ 42-43. Under the Guidelines, for an offender with a Criminal History Category I, the total offense level of 17 carries a range of imprisonment of 24-30 months.

As is frequently the case, the Guidelines computation, as applied to Clarence Samuel, does not reflect a recommended sentence that is close to approximating what is sufficient, *but not greater than necessary,* to meet the important goals of sentencing set forth under 18 U.S.C. § 3553(a). As the Probation Department notes and describes in reaching its recommendation, there are a collection of interrelated case-specific and defendant-specific considerations and circumstances, clearly present here, that constitute meaningful mitigating factors in favor of a variance outside (far below) the advisory guideline range. See, *PSR, Sentencing Recommendation* (citing Clarence's status as a first-time, non-violent offender, who has "expressed remorse for his actions and appears to appreciate the gravity of his conduct and the resulting consequences", and who has not only been wholly compliant with his pre-trial supervision but who has "actively pursued vocational training through Pretrial Services' re-entry services and is motivated to pursue a new career to fulfill his financial obligations and remain a productive member of society"). Notably, although the Probation Department made its recommendation of a sentence of 8 months' incarceration-- just 1/3 of the bottom of the Guidelines' range, despite having been unable to reach Mr. Samuel's spouse in order to corroborate the specifics of their family life, the Court has such

14

information manifestly available to it through the instant defense submission. See generally, <u>Exh. A</u>, *Supporting Statements of Defendant's Wife, Sister and Nephew*.

*18 U.S.C. § 3553(a)(5) – Any Pertinent Policy Statement issued by the Sentencing Commission*

There does not appear to be any applicable policy statement of the Sentencing Commission that is applicable to Mr. Samuel's conviction or case.

*18 U.S.C. § 3553(a)(6) - The Need to Avoid Unwarranted Disparities in Sentencing of Similarly Situated Defendants Convicted of Similar Conduct*

Clarence and his defense team certainly recognize the significant period of imprisonment this Court *could* impose for his criminal transgressions in this case. As he is one of 70 defendants separately charged in this NYCHA bribery and corruption scheme, it would appear particularly important that Clarence be sentenced in a manner that is reasonably consistent with the 69 others, while also balancing the collection of individual facts and circumstances attendant to each individual. At the time of this submission however, only one (1) of the other 69 defendants appear have been sentenced, while eight (8)[11] of them have, like Clarence, pled guilty and are scheduled to be sentenced between the time of this submission and Mr. Samuel's sentencing date of August 5, 2024. Accordingly, the defense would respectfully reserve further argument with respect to this statutory factor until the hearing, where the parties will have much more information to provide the Court.

While the defendant is seeking a non-custodial sentence, the Court has many options beyond just probation. The Court may find that electronic monitoring is necessary. Or, a requirement that for a period of time, Mr. Samuel can only leave his home for work, education,

---

[11] Including the defendant noted by the probation department whose sentencing is scheduled for July 30, 2024. See, *PSR ¶7*.

15

and other select activities. There may be travel restrictions, Court-ordered community service, and of course, the restitution obligation Mr. Samuel knows he will be required to make regardless of the other features of the sentence the Court will impose.

*18 U.S.C. § 3553(a)(7) – The Need to Provide Restitution to Victims*

The victim in this case is, as noted above, the NYCHA, the largest public housing authority in the country, funded by the United States Department of Housing and Urban Development (HUD) and therefore, by extension, U.S. taxpayers. *PSR ¶ 11*. From essentially the moment Clarence became aware that his participation in the culture of bribery at NYCHA had been detected by authorities, he recognized that he would be required to shoulder significant restitution as later set forth in the plea agreement[12] and which all parties anticipate the Court will order[13]. Indeed, as noted above, Clarence's swift decision to accept responsibility for his actions and enter into a guilty plea, allowing the government to conserve further resources in proving his guilt at trial or the course of an extended prosecution short of trial, reflects his immediate acknowledgement that he owes a debt he wrongly incurred and that he wants to begin the process of repaying that debt, as soon as possible.

Clarence's immediate determination to admit his wrongdoing, acknowledge his guilt and take the steps necessary to begin repaying it, is evidenced by how completely he has embraced the training and vocational opportunities, offered to him by pretrial services through available recovery and reentry services over the last several months. See generally, *PSR ¶¶ 8, 75-76 (i-iv)*. One reality Clarence immediately recognized was that he was going to have to start from scratch career wise. Rather than wallowing in self-pity or dwelling in his mistakes and his anxieties about the arduous and uncertain future that lay ahead, Clarence embraced the reality and began looking

---

[12] See, *Plea Agreement, Page 2*
[13] 18 U.S.C. § 3663(a)(3); see also, *PSR, Sentencing Recommendation.*

16

at his situation practically. He considered how he would lay a foundation for, and begin creating a new career in a new field that would enable him to once again provide for his wife and children, and equip him to meet his financial obligations to the Court. He is a work in progress right now, having completed several courses and certifications already this spring with the New Jersey Reentry Corporation Governor's Reentry Training and Employment Center and now having been officially enrolled in their 5-month HVAC Training.  See, Exh. B, *NJ Reentry Corporation, Facility Director, Michael Hayek (July 10, 2024)*. The program, which runs Monday through Friday from 9:00AM to 1:00PM, will provide Clarence with his OSHA-30 and EPA certifications, putting him well on his way toward his goal of creating a career in the HVAC field. As evidenced by his course with NJ Reentry as well as his current, ongoing internships in the peer recovery and behavioral health services fields, Clarence is also giving serious consideration to a career as a recovery coach or specialist. See, Exh. B, *Letter from James L. Johansen, James Lee Johansen Consulting LLC., Materials related to current internship with Clear Conscience Counseling LLC*.; see also, *PSR ¶77-78*.

It goes without saying, the success Clarence is able to find in making and pursuing a new professional career will have a direct impact on his ability to meet his financial obligations to the Court and for his family[14]. Not only would a sentence of significant prison time retard his ability to continue to complete each of the steps, (such as his HVAC training program or his current internships) necessary for him to actually enter either of the fields he has been pursing since his arrest, but he and his family would only grow further in debt during that time and after he is

---

[14] As noted by Theresea Samuel, the defendant's spouse, although she is employed and Clarence has found employment as a mobile debt collector at an hourly rate, they are currently struggling greatly from a financial perspective and lack any type of health insurance since lost his position with NYCHA. See, Exh. B.

17

released, while attempting to get back to point he has reached today through quite an admirable display of humility, diligence and resilience since the day of his arrest.

*Conclusion - Sentencing Recommendation*

Considering all the factors set forth in 18 U.S.C. §3553(a), counsel and Clarence Samuel humbly and respectfully request the Court impose a non-prison sentence that will allow him to be present in the lives of his children, his wife, his father and his siblings, all of whom depend on Clarence so greatly, even to this day. A non-prison sentence, will also allow him to continue to work and to complete training and certification programs and internships he is presently involved in. Of course, this would lead to a more stable financial place where he can earn the income necessary to support his children and settle the significant financial conditions of his sentence. Moreover, Clarence's status as first-time, non-violent offender and his well-documented[15], laudable, sustained commitment to helping his family members throughout his life, also strongly militates in favor of non-incarceration for this defendant. A non-custodial sentence will also be significant in preventing unnecessary further suffering from inuring to Clarence's wife, Theresa, who will need Clarence more than ever, as they prepare to address the weighty financial obligations this Court will be ordering. A non-prison sentence will also avoid further suffering and hardship to all of Clarence's children, his father, and his disabled brother, all of whom continue to depend on his support. The defendant instantly accepted responsibility for his wrongdoing and acknowledged his guilt from the very outset of the prosecution against him. The defendant's acknowledgement has saved the government time and valuable resources allowing them to expend those limited resources elsewhere. Mr. Samuel has clearly demonstrated that he not only accepts

---

[15] Please see all, *Supporting Statements* at Exh. A.

18

responsibility and has remorse for his crimes, but that he has actually learned his lesson and is using his failure as a teaching tool for his own children about resisting temptation, consequences of actions, and responding to adversity even when self-created.

Given consideration of the totality of the circumstances and a full engagement with the statutory factors as applied to this case, a probationary sentence coupled with court-ordered restitution and other appropriate conditions is sufficient, but not greater than necessary to meet the important goals of sentencing. This recommendation is in keeping with the even-handed spirit of the "parsimony provision" of 18 U.S.C. § 3553(a), and the defendant, through counsel, respectfully submits that the recommended sentence strikes the appropriate even balance between justice and mercy.

RESPECTFULLY SUBMITTED,

//s//David Jason Cohen//s//
Cohen Forman Barone, LLP
BY: David J. Cohen
950 Third Avenue, 11th Floor
New York, NY 10022
david@cfblaw.com
212-766-9111